IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| STEPHANIE BURNS, | ) |
| | ) |
| Plaintiff, | ) |
| -vs- | ) |
| | ) Civil Action No. 06-318 |
| SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA, ) | |
| et al., | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

# OPINION and ORDER OF COURT

## **SYNOPSIS**

Pending are three Motions for Summary Judgment filed by Defendants, Slippery Rock University of Pennsylvania ("SRU") and West Middlesex Area School District ("West Middlesex"). (Docket Nos. 31, 38, and 42). Plaintiff, Stephanie A. Burns, a former student at SRU initiated this lawsuit against both SRU and West Middlesex pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791, *et seq.* and the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. (Docket No. 1). Defendant, SRU has filed a Motion for Summary Judgment against Plaintiff (Docket No. 38) and a Motion for Summary Judgment against Defendant, West Middlesex. (Docket No. 42). Defendant, West Middlesex has filed a Motion for Summary Judgment against Plaintiff. (Docket No. 31). Plaintiff and West Middlesex have responded thereto. (Docket Nos. 47, 48, 49, 50, 51, 52, and 53). Based on my opinion set forth below, SRU's Motion against Plaintiff (Docket No. 38) is granted in part and

denied in part, SRU's Motion against West Middlesex (Docket No. 42) is denied as moot, and West Middlesex's Motion (Docket No. 31) is granted.

## I. **BACKGROUND**

Plaintiff was admitted to SRU as a freshman in the fall of 2001. In the fall of 2003, Plaintiff was accepted into the Slippery Rock School of Education Elementary Education certification program. As part of the requirements of the program, students must successfully complete a field experience. In April of 2005, SRU assigned Plaintiff to her field experience in a fourth grade classroom at the West Middlesex Elementary School. The teacher from West Middlesex assigned to Plaintiff was Georgiana Luce. After a couple of days at West Middlesex, Ms. Luce called SRU and expressed concerns about whether Plaintiff would be able to complete her field experience successfully. After receiving Ms. Luce's call, Dr. Robert Snyder, SRU's field experience coordinator for the early education / early childhood department, removed Plaintiff from the field experience at West Middlesex Elementary School.

In December of 2005, Plaintiff graduated from SRU without a teaching certificate. She now brings this suit against West Middlesex for violations of the Rehabilitation Act and the ADA, and against SRU for violations of the ADA. Defendants have filed Motions for Summary Judgment against Plaintiff, and SRU has filed a Motion for Summary Judgment against West Middlesex. The parties have responded thereto and the issues are ripe for review.

## II. **LEGAL ANALYSIS**

2

## A. **Standard of Review**

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.*

Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex,* 477 U.S. at 322. Once the moving

3

party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988), *quoting Celotex*, 477 U.S. at 322.

## B. **The ADA and the Rehabilitation Act**

Counts I and II of Plaintiff's Complaint are claims brought pursuant to the Rehabilitation Act of 1973. (Docket No. 1). Count III of Plaintiff's Complaint is a claim brought pursuant to the ADA. *Id.* West Middlesex argues that Plaintiff's claims against it fall outside the coverage of the Rehabilitation Act and the ADA. (Docket No. 32, pp. 16-19). Specifically, West Middlesex argues that it was not "operating" a "program or activity" in which Plaintiff was participating and, therefore, her claims are outside of the Rehabilitation Act and the ADA. *Id.* Additionally, West Middlesex argues that it was not the employer of Plaintiff and, thus, her claims fall outside of the ADA. *Id.* at 19. Plaintiff responds to these arguments in two footnotes. (Docket No. 49, p. 3, n. 3 and 4).

The Rehabilitation Act provides, in relevant part, as follows:

§ 794. Nondiscrimination under Federal grants and programs

(a) Promulgation of rules and regulations

4

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulatio n may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

(b) "Program or activity" defined

For the purposes of this section, the term "program or activity" means all of the operations of–....

(2)....(B) a local educational agency (as defined in section 7801 of Title 20), system of vocational education, or other school system;....

29 U.S.C. §794. West Middlesex admits that it receives federal funding. (Docket No. 32, p. 17). The Rehabilitation Act applies to all of the operations of West Middlesex. 29 U.S.C. §794(b)(2)(B). Contrary to West Middlesex's argument, I find that West Middlesex operates field experience programs for SRU students. Therefore, I find that Plaintiff's claims are covered by the Rehabilitation Act and summary judgment is not warranted on this basis.

The ADA provides, in relevant part, as follows:

§ 12132. Discrimination

Subject to the provisions of this subchapter, no qualified

5

> individual with a disability shall, by reason of such
> disability, be excluded from participation in or be denied
> the benefits of the services, programs, or activities of a
> public entity, or be subjected to discrimination by any
> such entity.

42 U.S.C. §12132. West Middlesex admits it is a political subdivision of Pennsylvania.
(Docket No. 7, ¶32). The ADA prohibits exclusion of a qualified individual with a
disability from benefits of "services, programs, or activities..." and prohibits
discrimination. 42 U.S.C. §12132. Contrary to West Middlesex's argument, I find that
operating field experiences for college students is a service and/or an activity.
Therefore, I find that Plaintiff's claims are covered by the ADA. Consequently,
summary judgment is not warranted on this basis.

Finally, West Middlesex argues that because it was not Plaintiff's employer, the
ADA, by its terms, does not apply. (Docket No. 32, p. 19). This argument has no merit.
As set forth above, West Middlesex is a political subdivision of Pennsylvania. (Docket
No. 7, ¶32). As such, it is a public entity subject to §12132 of the ADA. *See,* 42 U.S.C.
§13131(1). Consequently, summary judgment is not warranted on this ground.
 Discrimination cases brought pursuant to the Rehabilitation Act and ADA are
analyzed under the identical standards.[1] *Donahue v. Consolidated Rail Corp.,* 224 F.3d
226, 229 (3d Cir. 2000); *McDonald v. Commonwealth of Pa.,* 62 F.3d 92, 94 (3d Cir. 1995).
Thus, to establish a *prima facie* case under either the Rehabilitation Act or the ADA,

---

[1]The Rehabilitation Act provides that anyone receiving federal funds may not discriminate
against an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a). The Disabilities Act
prohibits discrimination in employment "against a qualified individual with a disability because of the
disability...." 42 U.S.C. § 12112(a).

6

the plaintiff has the burden of proving that:

> (1)  He or she has a disability;
>
> (2)  He or she is otherwise qualified, with or without reasonable accommodations; and
>
> (3)  He or she suffered an adverse action because of the disability.

*Donahue,*  224 F.3d at 229; *Deane v. Pocono Medical Center,*  142 F.3d 138, 142 (3d Cir. 1998); 42 U.S.C. §12131; 29 U.S.C. §794.  A failure to meet any one of these elements is fatal to Plaintiff's case.

 The familiar burden shifting paradigm, established in *McDonnell Douglas Corp. v. Green,*  411 U.S. 792, 793-94 (1973), applies here.  As a result, if the plaintiff makes out a *prima facie* showing of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse action.  If the defendant meets this burden, the plaintiff must then offer evidence that the defendant's stated reason for the adverse action was pretextual.  *Id.*  at 802-04.  To prove pretext, the plaintiff must "cast [] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication...or...allow[] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."  *Fuentes v. Perskie,*  32 F.3d 759, 762 (3d Cir. 1994).

### 1. *Prima facie case* - **Disability**

To begin with, Defendants assert that Plaintiff cannot meet the first element of her *prima facie* case - that she is disabled.   (Docket Nos. 32 and 38).  To

7

demonstrate that Plaintiff has a disability, she must prove that she: (A) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) has a record of such an impairment; or (C) is regarded as having such an impairment. *Dean v. Pocono Med. Ctr.,* 142 F.3d 142, 143 (3d Cir. 1998), *citing* 42 U.S.C. § 12102(2); 29 C.F.R. §1630.2(g). Plaintiff asserts that there is a genuine issue as to whether she has impairments (hearing and speaking) that substantially limit her ability to hear, speak, and work, whether she has a record of such impairments, and/or whether she was regarded as having such impairments. (Docket No. 48, pp. 3-7; Docket No. 49, pp. 4-12).

## a. **An impairment or having a record of an impairment**

In dealing with the first two elements set forth above, as noted by SRU, I find there is a no genuine issue of material fact that Plaintiff has a hearing impairment and/or a speech impairment and that Plaintiff has a record of such impairments. (Docket No. 39, p. 4). Merely having an impairment, however, does not mean one is disabled. *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184 (2002). Thus, I must further consider the issue of whether Plaintiff's hearing impairment "substantially limits" the major life activities. *Id.*

### 1. Major Life Activities

"Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."

8

29 C.F.R. §1630.2(i); 45 C.F.R. §84.3(j)(2)(ii).[2]  With regard to whether she has an impairment or a record of an impairment, Plaintiff claims that she is substantially limited in the major life activities of hearing and speaking. (Docket No. 48, pp. 4-7 and Docket No. 49, p. 4).[3]

### 2. Substantially Limits

The next step is to determine whether Plaintiff's hearing and speaking impairments "substantially limit" her in her contested major life activities of hearing and speaking. Substantially limits means: "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. §1630.2(j)(1). Courts should consider the following factors in determining whether an individual is substantially limited in a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or

---

[2]This is not an exhaustive list and where an activity is not listed specifically, a court must determine whether the activity is a major life activity. *See generally, Bragdon v. Abbott,* 524 U.S. 624, 638 (1998).

[3] Plaintiff lists in a heading in her Brief in Opposition to West Middlesex's Motion for Summary Judgment that Plaintiff is substantially limited in her major life activity of "hearing, speaking, and working." (Docket No. 49, p. 4). In support of the same, Plaintiff incorporates sections of her Brief in Opposition to SRU's Motion for Summary Judgment. *Id.,* incorporating Docket No. 48, pp. 4-7, Section (B)(1)(a) and (B)(2). Said sections, however, do not have any substantive argument regarding the major life activity of working. *See,* Docket No. 48, pp. 4-7. As a result, I find that Plaintiff has failed to come forward with any argument, let alone a substantive argument, regarding the major life activity of working as it relates to the first two types of potential disabilities. As a result, I do not consider whether Plaintiff is substantially limited in the major life activity of working as it relates to the first two types of potential disability claims.

9

expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. §1630.2(j)(2). Short-term limitations are not "substantially limiting" and therefore are not disabilities. *Kelly v. Drexel Univ.*, 94 F.3d 102, 107 (3d Cir. 1996), *citing,* 2 EEOC Compliance Manual §902, at 902-19. In addition, "the determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment...." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 475 (1999). "'[S]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.' *See* Webster's Third New International Dictionary 2280 (1976) (d efining 'sub stantially' as 'in a sub stantial manner' and 'substantial' as 'considerable in amount, value, or worth' and 'being that specified to a large degree or in the main'); *see also* 17 Oxford English Dictionary 66-67 (2d ed.1989) ( 'substantial': '[r]elating to or proceeding from the essence of a thing; essential'; '[o]f ample or considerable amount, quantity, or dimensions'). The word'"substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." *Toyota, Motor Mfg.*, 534 U.S. at 196-97. Thus, "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *Id., citing* 29 CFR §§ 1630.2(j)(2)(ii)-(iii) (2001).

After a review of the evidence in the light most favorable to Plaintiff, I find

10

that she has failed to produce evidence that her hearing impairment "substantially limits" her ability to hear or speak.  While her hearing impairment undoubtedly causes Plaintiff to suffer from some limitations, I find the limitations on her hearing and speech are not "substantial." *See, Hopkins v. St. Joseph's Creative Betinning,* No. 02-6791, 2003 WL 22795302 (E.D. Pa. Nov. 7, 2003)(holding speech disability did not substantially limit major life activities); *Dorn v. Potter,* 191 F.Supp.2d 612 (W.D. Pa. 2002) (holding speech impediment did not substantially limit any major life activity, including speaking).  For example, the evidence establishes that Plaintiff was able to complete high school on a regular course and attend and graduate from college. Plaintiff did not register at SRU as a student with a disability.  (Docket No. 34-14, Snyder Depo, pp. 148-152; Docket No. 34-5, Smith Depo, pp. 55-56).  At no time did Plaintiff wear a hearing aid.  (Docket No. 34-2, Burns Depo, p. 11).  In fact, she alleges in her Complaint that her hearing and speech impairments "do not prevent her from communicating effectively with others, including her students and colleagues." (Docket No. 1, ¶5).  Additionally, Plaintiff was able to fully participate in her day long deposition by listening to the questions and responding thereto. (Docket No. 34-2).  At no time during the deposition did the record indicate that Plaintiff had difficulty hearing. *Id.*  Furthermore, the court reporter did not appear to have any difficulty understanding and transcribing what the Plaintiff was saying. *Id.*  Thus, the nature and successes of Plaintiff's education and her ability to effectively communicate with others demonstrate the lack of a "substantially limiting" imp airment.  Consequently, viewing the evidence in the light most

11

favorable to Plaintiff, I find that there is no genuine issue of material fact that Plaintiff's alleged speech and hearing impairments and her alleged record of the same did not "substantially limit" her in the major life activities of speaking and/or hearing under the Rehabilitation Act or the ADA.

In opposition, Plaintiff first argues that she is substantially limited because Dr. Yost, a hearing specialist, advised her to avoid activity involving loud noises. (Docket No. 48, p. 4). Avoiding loud noises, however, does not tend to show that Plaintiff was "substantially limited" in hearing or speaking. This is especially true when Dr. Yost indicates that her prognosis is good and he references the narrative summary by Dr. Campbell, an audiologist. (Docket No. 52-4, Exhibit 4, SB146-47. Dr. Campbell indicated in his narrative summary that Plaintiff's hearing loss is "a mild/moderate LE conductive loss. The RE was within normal limits through 4KHz with a moderate deficit notes @ 6KHz." (Docket No. 52-4, Ex. 4, SB145). Thus, while it is true that Dr. Yost indicated a significant impairment of hearing function as it relates to her ability to hear in noisy or group situations and her ability to locate the direction of sound (*Id.* at SB143), this is not evidence of a "substantial limitation" in Plaintiff's ability to hear or speak.

With regard to her speech, Plaintiff argues that while she was in kindergarten through seventh grade she received special education services to address her "multi-articulation errors." (Docket No. 48, p. 6). Again, however, I am at a loss of how this special education received while she was in grade school, shows a substantial limitation in her ability to speak. In fact, in seventh grade Plaintiff's recommended

12

assignment was for "regular seventh grade education / No Itinerant Speech." (Docket No. 52-3, Exhibit 3, SB123-24). This is due to the fact that Plaintiff's production of the R and R blend sounds had plateaued, such that Plaintiff no longer required special education services. *Id.* at SB128-29. Furthermore, I am not persuaded by Plaintiff's argument that informing a professor and the classmates seated around her that she has a hearing impairment is "substantially limiting." (Docket No. 48, p. 7). While this may be limiting, I find it is not substantially limiting in the way the term is defined to be a disability.

Accordingly, I find that there is no genuine issue of material fact that Plaintiff was not disabled under the first two definitions of disabled within meaning of the Rehabilitation Act and the ADA. Thus, Plaintiff has failed to establish the first element of a *prima facie* case of discrimination regarding the same. Thus, Defendants are entitled to a judgment as a matter of law. Therefore, summary judgment in favor of the Defendants is appropriate as to the first two definitions of disability under the ADA and the Rehabilitation Act.[4]

## b. **Regarded as having an impairment**

The third definition of disabled provides that an individual will be considered disabled within the meaning of the ADA if he is "regarded as" having a disability. *See*, 42 U.S.C. §12102(2)(C). There are two (2) ways in which a plaintiff may fall within this definition:

---

[4]The parties argue the remaining element of a *prima facie* case at issue here, namely, whether Defendant knew of Plaintiff's disability yet failed to provide the Plaintiff with a reasonable accommodation. Because I have found that Plaintiff does not meet the definition of a disabled person, Plaintiff cannot proceed beyond the first element. Therefore, I need not address this element.

> 1.  Despite having no impairment at all, the employer erroneously believes that the plaintiff has an impairment that substantially limits a major life activity; or
>
> 2.  The plaintiff has a nonlimiting impairment that the employer mistakenly believes substantially limits a major life activity.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).  As set forth above, Plaintiff has speech and hearing impairments.  Thus, Plaintiff fits into the second category of the "regarded as" definition.  Therefore, Plaintiff must show that Defendants believed that she had a substantially limiting impairment when, in fact, the impairment was not so limiting.  *Id.*  I note, however, that it is insufficient to show that a defendant merely regarded a plaintiff as having an impairment.  *See, Dean v. Pocono Med. Ctr.,*  142 F.3d 138, 143 (3d Cir. 1989).  Rather, the plaintiff must show that the defendant regarded the plaintiff as having a substantially limiting impairment.  *Id.*

Plaintiff claims that she was disabled under the terms of the ADA by virtue of the fact that Defendants regarded her impairments as being substantially limited in the major life activities of speaking and working.[5] (Docket No. 48, pp. 7-15, Docket No. 49, pp. 4-14).   There is evidence that Defendants were aware of Plaintiff's hearing and speaking issues.  Specifically, with regard to West Middlesex, there is

---

[5]When working is a contested major life activity, a court must first determine whether the plaintiff is substantially limited by any other major life activity other than working.  *Mondzelewski v. Pathmark Stores, Inc.,* 162 F.3d 778, 783-84 (3d Cir. 1998), *citing,* 29 C.F.R. Pt. 1630, App. § 1630.2(j). "If the court finds that the individual is substantially limited in any of these major life activities, the inquiry ends there.  On the other hand, if the individual is not so limited, the court's next step is to determine whether the individual is substantially limited in the major life activity of working."  *Id.*  Thus, I will first consider whether Plaintiff's hearing and speech impairments "substantially limit" her in the major life activities of speaking.

14

evidence from Plaintiff that she told Ms. Luce that she had a hearing problem. (Docket No. 52-4, Ex. 5, p. 75). Similarly, there is evidence that Ms. Luce knew of her speech impairment. (Docket No. 52-4, Ex. 5, pp. 79, 81, 108, 114; and Docket No. 52-5, Ex. 7, pp. 95-96, 132-33, 139). Additionally, there is evidence that SRU knew that Plaintiff had both hearing and speech issues. (Docket No. 52-4, Ex. 5, p. 146; Docket No. 52-6, Ex. 9, ¶¶1, 4; Docket No. 52-5, Ex. 7, pp. 95-96, 112-14). "[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate...that the employer regarded the employee as disabled...." *Kelly v. Drexel University,* 94 F.3dd 102, 109 (3d Cir. 1996); *Sutton,* 527 U.S. at 489. The next issue I must decide is whether there is a genuine issue that Defendants believed Plaintiff's hearing and speech impairments were substantially limiting in the major life activities of speaking or working.

After a review of the evidence in the light most favorable to Plaintiff, I find that there is a genuine issue of material fact that West Middlesex and SRU regarded Plaintiff as being substantially limited in the major life activity of speaking. (Docket No. 52-8, Ex. 19, pp. 63; Docket No. 52-5, Ex. 7, pp. 95-96); (Docket No. 52-5, Ex. 7, pp. 137-39; 145, 151). For example, Dr. Snyder testified that Ms. Luce told him she was concerned about Plaintiff's pronunciation of words. (Docket NO. 52-5, Ex. 7, p. 95-96). Dr. Snyder also testified that "[a]fter the May 5[th] meeting, we had recommended that Stephanie go and apply for disabilities, since she had been taking the speech therapy on her own prior to that semester." *Id.* at 151. These statements create a genuine issue of material fact that West Middlesex and SRU regarded Plaintiff as

15

being substantially limited in her ability to speak. Consequently, summary judgment in favor of SRU or West Middlesex as to Plaintiff's "regarded as" claim related to speaking is not warranted on this basis.[6]

## 2. *Prima facie case* - Otherwise Qualified, with or without accommodations

Defendants both argue that Plaintiff cannot satisfy the second prong of her *prima facie* case in that she was not otherwise qualified, with or without reasonable accommodations, to perform the essential functions of an elementary field student in the spring of 2005. (Docket No. 32, pp. 8-11; Docket No. 39, pp. 12-14). The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A two-part test is used to determine whether a plaintiff is a "qualified individual." 29 C.F.R. § 1630.2. First, a court must consider whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Gaul*, 134 F.3d at 580; *see*, 29 C.F.R. § 1630.2(m). Second, the court must consider whether "the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.*; *see also, Deane,* 142 F.3d at 145.

---

[6]Since I have found that there is a genuine issue regarding whether Defendants regarded Plaintiff as being substantially limited in her ability to speak, my inquiry ends here and I do not consider whether Defendants regarded Plaintiff as being substantially limited in her ability to work. *See, Mondzelewski,* 162 F.3d at 783-84; *see also,* 29 C.F.R. Pt. 1630, App. § 1630.2(j) ("If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working.").

16

With regard to the first element, Defendants argue that because of Plaintiff's "grammar usage, unprofessional dress and hygiene, inappropriate sharing of personal information and lack of student interaction," Plaintiff was not qualified to remain in the classroom. (Docket No. 32, pp. 9, 11; Docket No. 39, pp. 13-14). There is evidence, however, disputing whether Plaintiff had poor grammar usage, unprofessional dress and hygiene, shared inappropriate information and lacked student interaction. (Docket No. 52-6, Ex. 9, ¶¶8-11, 13). As a result, summary judgment is not warranted on this basis.

With regard to the second element, West Middlesex concludes, without citation to case law or the record, that "no accommodation was available with respect to unprofessional conduct." (Docket No. 32, p. 9). With regard to this argument, I have found above that there is a genuine issue of material fact with regard to whether Plaintiff's conduct was unprofessional. In another section of its Brief, however, West Middlesex further argues that Plaintiff never requested an accommodation from them. (Docket No. 39, p. 15). Plaintiff does not respond thereto. *See,* Docket No. 49. The only reference to reasonable accommodations by Plaintiff is on page 8 of her Brief in Opposition wherein she concludes that "[t]here is no question West Middlesex's decision makers were aware Burns had a hearing and speech impairment and that she required reasonable accommodations." (Docket No. 49, p. 8). As acknowledged by Plaintiff in her Brief in Opposition to SRU's Motion, however, Plaintiff must make an initial request, or at least make known her desire, for an accommodation before West Middlesex is obligated to participate in the

17

interactive process.  (Docket No. 48, p. 14).  *See, Armstrong v. Burdette Tomlin Memorial Hosp.*, 438 F.3d 240, 247 (3d Cir. 2006), *citing Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir.1999).  Since Plaintiff did not come forward with any evidence that she requested a reasonable accommodation of West Middlesex or even that she desired one, summary judgment in favor of West Middlesex is warranted.

### 3. **Employer's Reason**

Since Plaintiff has survived her *prima facie* case of "regarded as" being substantially disabled in the major life activity of speaking as to SRU, the burden shifts to SRU to articulate some legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802-04.  Here, SRU asserts that its decision was based on the report from Ms. Luce of poor grammar, poor hygiene and professional appearance, lack of interaction with students, and inappropriate sharing of personal information. (Docket No. 39, pp. 16-17).  Based on the reasons proffered by SRU, I find that it has met its burden.

### 4. **Pretext**

Since SRU met its burden, Plaintiff must then offer evidence that SRU's stated reasons were pretextual. *McDonnell Douglas,* 411 U.S. at 802-04. To prove pretext, the plaintiff must "cast [] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication...or...allow[] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse

employment action." *Fuentes v. Perskie,* 32 F.3d 759, 762 (3d Cir. 1994). "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* at 765 (citations omitted).

Based on a review of the evidence in the light most favorable to Plaintiff, there are discrepancies between the testimony of Ms. Luce and Mr. Snyder such that a reasonable factfinder could rationally find them "unworthy of credence." (Docket No. 52-8, Ex. 19, p. 101-03, 107-08; Docket No. 52-5, Ex. 7, pp. 95-96 . For example, Ms. Luce testified that she did not tell anyone at SRU that Plaintiff had speech difficulties that she had not corrected. (Docket No. 52-8, Ex. 19, p. 108). Dr. Snyder, testified, however, that Ms. Luce told him that Plaintiff was unable to pronounce words properly. (Docket No. 52-5, Ex. 7, p. 96). As a result, summary judgment is not warranted as to Plaintiff's "regarded as" being disabled speech claim against SRU.

## C. **Cross-Claims**

Finally, SRU has filed a Motion for Summary Judgment as to West Middlesex's cross-claims for sole liability, joint and several liability, and/or contribution and

19

indemnity. (Docket No. 42).   In response, West Middlesex argues that the Motion

should be denied as premature. (Docket No. 53).  Because I have granted summary

judgment in favor of West Middlesex, the cross-claims, based on Plaintiff's Complaint

against West Middlesex, asserted by West Middlesex no long exist. Consequently, the

Motion (Docket No. 42) is denied as moot.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ORDER OF COURT**

AND NOW, this _____8th_____ day of _August_, 2007, after careful

consideration Defendants' Motions for Summary Judgment (Docket Nos. 31, 38, and

42) and the related submissions and for the reasons set forth in the accompanying

Opinion it is ordered as follows:

1.     Summary judgment is granted in favor of Defendants (Docket Nos. 31
       and 38) with regard to Plaintiff's claim that she is disabled or has a
       record of a disability within meaning of the Rehabilitation Act and the
       ADA;

2.     Summary judgment as to Plaintiff's "regarded as" being disabled in
       speaking is granted as to West Middlesex (Docket No. 31), but denied as
       to SRU (Docket No. 38); and

3.     SRU's Motion for Summary Judgment against West Middlesex (Docket
       No. 42) is denied as moot.

20

A settlement conference for this case is set for *Aug. 16* ,
2007, at *2:00 pm* .

BY THE COURT:

*Donetta W. Ambrose*

Donetta W. Ambrose,
Chief U. S. District Judge

21